1

2

3

4

5

6

7

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

8  RICHARD PAREDEZ,                                    CASE NO. 1:10-CV-01672-AWI-DLB PC

9                      Plaintiff,                      FINDINGS AND RECOMMENDATIONS
                                                       RECOMMENDING DISMISSAL OF
10           v.                                        CERTAIN CLAIMS AND DEFENDANTS

11  JAMES YATES, et al.,                               (DOC. 11)

12                      Defendants.                    OBJECTIONS, IF ANY, DUE WITHIN
                                                       TWENTY-ONE DAYS
13  _____/

14

15  **I.      Background**

16          Plaintiff Richard Paredez ("Plaintiff") is a prisoner in the custody of the California

17  Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding pro se and in

18  forma pauperis in this civil rights action pursuant to 42 U.S.C.§ 1983.  Plaintiff initiated this

19  action by filing his complaint on September 15, 2010. Doc. 1.  On May 6, 2011, the Court

20  screened Plaintiff's complaint and found that it stated a cognizable retaliation claim against

21  Defendant Ramirez, but failed to state any other claims.  Doc. 9.  Plaintiff was provided the

22  opportunity to either file a first amended complaint or notify the Court of his willingness to

23  proceed only against Defendant Ramirez.  On May 31, 2011, Plaintiff filed his first amended

24  complaint.  Doc. 11.

25          The Court is required to screen complaints brought by prisoners seeking relief against a

26  governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

27  Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

28  legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

1  that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

2  § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

3  paid, the court shall dismiss the case at any time if the court determines that . . . the action or

4  appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

5  1915(e)(2)(B)(ii).

6  　　　A complaint must contain "a short and plain statement of the claim showing that the

7  pleader is entitled to relief . . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not

8  required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere

9  conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing

10  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must set forth "sufficient factual

11  matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id.* (quoting *Twombly*,

12  550 U.S. at 555).  While factual allegations are accepted as true, legal conclusions are not.  *Id.*

13  **II.　　Summary Of First Amended Complaint**

14  　　　Plaintiff was previously incarcerated at Pleasant Valley State Prison ("PVSP") in

15  Coalinga, California, where the events giving rise to this action occurred.  Plaintiff names as

16  Defendants: warden James Yates, and correctional officers M. Hernandez, Phealon, John Doe,

17  and Ramirez.

18  　　　Plaintiff alleges the following.  Defendant Yates was aware of numerous inmate

19  grievances filed against Defendant Hernandez and failed to act by minimizing Defendant

20  Hernandez's contact with inmates.  Am. Compl. 3A-B.  On August 7, 2009, Defendant

21  Hernandez forced Plaintiff out of his assigned cell and to Plaintiff's knees.  *Id.* at 3C.  A cell

22  search was conducted, during which Defendant Hernandez threatened Plaintiff and his cell mate

23  for disrespecting Defendant Hernandez's first watch officer.  *Id.* at 3D.  Defendant Hernandez

24  swept Plaintiff's property onto the floor, including a bowl of soup onto Plaintiff's personal

25  property.  *Id.*  Plaintiff sat on his knees and handcuffed behind his back.  *Id.*  Defendant

26  Hernandez grabbed Plaintiff by his wrist and lifted him to his feet, bending the wrist until

27  Plaintiff moaned in pain.  *Id.*  He then shoved Plaintiff into the cell.  *Id.*  Plaintiff contends that

28  his left wrist was swollen and had scarring.  *Id.* at 3B.  Plaintiff also contends that he suffered

1   psychological and mental injury.  *Id.* at 3F.  Defendant Hernandez placed Plaintiff and his cell

2   mate on CTQ (confined to quarters) status.  *Id.* at 3G-3H.  Defendant Phealon witnessed

3   Defendant Hernandez's alleged use of excessive force and failed to act.  *Id.* at 3I-3J.  Defendant

4   John Doe was the watch tower officer who opened Plaintiff's cell door to allow Defendants

5   Hernandez and Phealon to act.  *Id.* at 3K-3L.  Defendant John Doe did not act to prevent

6   excessive force, and did not allow Plaintiff to leave his CTQ without prior approval from the A-

7   yard captain.  *Id.* at 3L. Plaintiff was not permitted to seek medical attention for his alleged

8   injuries because of the CTQ.  *Id.* at 3M.

9        On August 10, 2009, Defendant Ramirez was packing Plaintiff's property and found a

10   grievance written by Plaintiff concerning being wrongfully placed on CTQ by Defendant

11   Hernandez.  *Id.* at 3N.  Defendant Ramirez removed the grievance from Plaintiff's property and

12   shoved it into Defendant's open shirt.  *Id.*  Defendant handcuffed Plaintiff and escorted him to

13   counselor's office.  *Id.*  There, correctional officers B. Davis and John Doe 2 yelled at Plaintiff

14   and attempted to get Plaintiff to lie and say that Plaintiff and his cell mate owed money.  *Id.* at

15   3O.  Plaintiff refused, and Defendant Ramirez became angry.  *Id.*  Defendant Ramirez asked why

16   Plaintiff was trying to take down his partner (presumably, Defendant Hernandez).  *Id.*  Defendant

17   Ramirez told Plaintiff that he would not come back to the yard if he stated that he owed money.

18   *Id.*  Plaintiff refused, at which point Defendant Ramirez informed Plaintiff that his life was going

19   to be hell on this yard and that Plaintiff could not file his 602 grievance.  *Id.*

20        Defendant Ramirez told Plaintiff Defendant Hernandez would return tomorrow to handle

21   Plaintiff personally.  *Id.*  Defendant then secured Plaintiff in the C-section shower for 3 hours

22   during the night dayroom program, while leaving Plaintiff's cell door open.  *Id.*  Because

23   Plaintiff was afraid for his life, he took a razor to his wrist to attempt suicide in order to be

24   removed from the cell before Defendant Hernandez returned.  *Id.*

25        Plaintiff requests as relief monetary damages for past and future pain and suffering,

26   including shame, humiliation, emotional distress, mental distress, and for the use of excessive

27   force.

28   ///

3

1    **III.    Analysis**

2        **A.    Eighth Amendment - Excessive Force**

3        "What is necessary to show sufficient harm for purposes of the Cruel and Unusual

4    Punishments Clause [of the Eighth Amendment] depends upon the claim at issue . . . ." *Hudson*

5    *v. McMillian*, 503 U.S. 1, 8 (1992).  "The objective component of an Eighth Amendment claim is

6    . . . contextual and responsive to contemporary standards of decency." *Id.* (internal quotation

7    marks and citations omitted).  The malicious and sadistic use of force to cause harm always

8    violates contemporary standards of decency, regardless of whether or not significant injury is

9    evident.  *Id.* at 9; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth

10   Amendment excessive force standard examines *de minimis* uses of force, not *de minimis*

11   injuries).  However, not "every malevolent touch by a prison guard gives rise to a federal cause

12   of action."  *Hudson*, 503 U.S. at 9.  "The Eighth Amendment's prohibition of cruel and unusual

13   punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

14   force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.*

15   at 9-10 (internal quotations marks and citations omitted).

16       Plaintiff fails to state a claim against Defendant Hernandez.  The alleged force used by

17   Defendant Hernandez in this instance is at most *de minimis*.  "A prison official can violate a

18   prisoner's Eighth Amendment rights by failing to intervene."  *Robins v. Meecham*, 60 F.3d 1436,

19   1442 (9th Cir. 1995).   Plaintiff fails to state a claim against Defendants Phealon and Doe.  First,

20   Plaintiff has not sufficiently alleged that the use of force here was excessive.  Second, Plaintiff

21   fails to allege facts which indicate Defendants Phealon and Doe had the opportunity to intervene.

22       **B.    Eighth Amendment - Medical Care**

23       Plaintiff contends that Defendant John Doe did not allow Plaintiff seek medical care for

24   his swollen wrist.  The Eighth Amendment prohibits cruel and unusual punishment.  "The

25   Constitution does not mandate comfortable prisons." *Farmer v. Brennan*, 511 U.S. 825, 832

26   (1994) (quotation and citation omitted).  A prisoner's claim of inadequate medical care does not

27   rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the

28   prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official

4

1  'acted with deliberate indifference in doing so.'" *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th

2  Cir. 2004) (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) (citation omitted)).

3  The deliberate indifference standard involves an objective and a subjective prong.  First, the

4  alleged deprivation must be, in objective terms, "sufficiently serious . . . ." *Farmer*, 511 U.S. at

5  834 (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  Second, the prison official must "know[]

6  of and disregard[] an excessive risk to inmate health or safety . . . ." *Id.* at 837.

7       Plaintiff fails to allege a sufficiently serious harm, and thus fails to state a claim against

8  John Doe for denial of medical care.

9       **C.**        **Supervisory Liability**

10       Plaintiff names warden Yates as a Defendant, based on a theory of supervisory liability.

11  The term "supervisory liability," loosely and commonly used by both courts and litigants alike, is

12  a misnomer.  *Iqbal*, 129 S. Ct. at 1949.  "Government officials may not be held liable for the

13  unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at

14  1948.  Rather, each government official, regardless of his or her title, is only liable for his or her

15  own misconduct.  When the named defendant holds a supervisory position, the causal link

16  between the defendant and the claimed constitutional violation must be specifically alleged.  *See*

17  *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th

18  Cir. 1978).  To state a claim for relief under § 1983 for supervisory liability, Plaintiff must allege

19  some facts indicating that the defendant either: personally participated in the alleged deprivation

20  of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated

21  or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional

22  rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642,

23  646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

24  1989).

25       Because Plaintiff fails to allege an excessive force claim against Defendant Hernandez, he

26  also fails to state a claim against Defendant Yates on a theory of supervisory liability.  Plaintiff

27  has not alleged facts which demonstrate Defendant Yates had knowledge of an underlying

28  constitutional violation against Plaintiff and failed to act.

1     **D.     First Amendment - Inmate Grievance**

2          Prisoners have a constitutional right to file inmate grievances.  *Brodheim v. Cry*, 584 F.3d

3     1262, 1269 (9th Cir. 2009) (citing *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005), and

4     *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)).  Here, Plaintiff alleges that Defendant

5     Hernandez and Doe prevented Plaintiff from filing an inmate grievance by placing him on CTQ

6     status.  Plaintiff has not sufficiently alleged a claim.  Plaintiff fails to allege sufficient facts which

7     indicate that Defendants Hernandez and Doe prevented Plaintiff from filing an inmate grievance

8     regarding this issue.  Being placed on CTQ appears to be a temporary status, and it is not clear if

9     CTQ status would prevent Plaintiff from filing his grievance.

10         Plaintiff does state a cognizable First Amendment claim against Defendant Ramirez.

11    Plaintiff alleges that Defendant Ramirez told him that he could not file a grievance against

12    Defendant Hernandez, and that Defendant Hernandez would be in to work the next day to handle

13    Plaintiff personally.  Defendant Ramirez also allegedly took Plaintiff's inmate grievance from his

14    property.  This is sufficient to allege a chilling effect on Plaintiff's right to file an inmate

15    grievance.  *Rhodes*, 408 F.3d at 567.

16    **IV.     Conclusion And Recommendation**

17         Based on the foregoing, it is HEREBY RECOMMENDED that:

18         1.     This action proceed against Defendant Ramirez for violation of the First

19                Amendment by denying Plaintiff the right to file an inmate grievance;

20         2.     Plaintiff's claims against Defendants Yates, Hernandez, Phealon, and John Doe

21                are dismissed for failure to state a claim upon which relief may be granted; and

22         3.     Defendants Yates, Hernandez, Phealon, and John Doe be dismissed from this

23                action.

24         These Findings and Recommendations will be submitted to the United States District

25    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within **twenty-**

26    **one (21) days** after being served with these Findings and Recommendations, the Plaintiff may

27    file written objections with the Court.  The document should be captioned "Objections to

28    Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

1  objections within the specified time may waive the right to appeal the District Court's order.

2  *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

3      IT IS SO ORDERED.

4      **Dated:    October 3, 2011**                    **/s/ Dennis L. Beck**
                                                     UNITED STATES MAGISTRATE JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28